**UNITED STATES DISTRICT COURT**

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Glenn A. Arrigo and Elise M. Arrigo<br><br>*Plaintiffs*<br><br>v.<br><br>Ernest J. Boch, Jr. and Kristen Boch<br><br>*Defendants* | **COMPLAINT**<br><br>Civil Action Number: |

## INTRODUCTION

The Plaintiffs, Mr. and Mrs. Arrigo, allege that they have been victims, inter alia, of invasion of privacy, harassment, coercion, breach of contract, trespass, nuisance, and have suffered a decrease in the value of their home as a result of the actions of the Defendants, Mr. and Mrs. Boch. Also, the Arrigos allege their state and federal civil rights have been violated. The actions of the Bochs, as hereinafter set forth, are primarily a result of the Bochs' desire to continually expand their mansion in area and improvements as well as their conduct as neighbors in a residential neighborhood. As a result the Arrigos bring suit against the Bochs, seeking compensatory damages, punitive damages, damages for conscious pain and suffering as well as attorney's fees, costs and expenses. TRIAL BY JURY IS DEMANDED.

## THE PARTIES

1. The Plaintiffs, Glenn A. and Elise M. Arrigo (hereinafter the "Plaintiffs"), are a married couple domiciled in 4 Plymouth Dr. Norwood, Massachusetts.

2. The Defendant, Ernest J. Boch, Jr. and Kristen Boch (hereinafter "Boch") are a married couple domiciled in 190 Sumner Street., Norwood, Massachusetts.

## JURISDICTION AND VENUE

This action arises under the Fourth, Fifth and Fifteenth Amendments to the United States Constitution, and under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 and under the Constitution of the Commonwealth of Massachusetts as well as the Common Law. The Bochs and the Arrigos are United States citizens and residents of the Commonwealth of Massachusetts.

## FACTS

### Zoning Variance

On August 30, 2005 the Bochs requested a special permit from the Town of Norwood Board of Appeals for "a variance under section 4220 of the Zoning Bylaws to allow for a 19' front setback where 30' is required."

The Arrigos were present at this hearing and inquired into the project. Mrs. Arrigo asked how long the construction was anticipated to take and was told six (6) months. When Mr. Arrigo asked what the construction would look like from his property he was told that it had been recommended that the "existing eastern white pine on the Arrigo's property" would be preserved. Later, Mr. Arrigo was told that "the trees are staying, and a new fence going up." When Mr. Arrigo asked how the Defendant could "guarantee that the trees abutting his property remain" he was told that the "Board will implement conditions to their decision that no trees be removed and be maintained wherever they should be throughout." Mrs. Arrigo inquired about the location of the generators and was answered that they would be moved to the front of the property. Id.

The Board of Appeal's November 30, 2005 Grant of the Bochs' variance request included the following special conditions, among others:

"1. Good Housekeeping must be maintained at all times"

"2. Completion Date: One year from the date of certification by the Town Clerk." [i.e. November 30, 2006]

"3. There will be 25' tall trees planted in front of the property on Hampden Drive with 18' high evergreen trees planted behind the fence for additional screening."

"4. All lighting fixtures will be fully shielded in a way as to direct all light away from neighboring properties."

### Appeal of Zoning Variance

On December 15, 2005 the Arrigos timely filed a Zoning Appeal of the granted variance under M.G.L. ch. 40A. When the Arrigos' action was filed the Norwood Town Counsel stated in a letter dated January 11, 2006 to the Zoning Board of Appeal that the Board had "failed to make the requisite findings to support the grant of a variance." In support of their appeal of the variance the Arrigos stated:

1. The Zoning Board did not take the impact on the Bochs' neighbors seriously in their decision;

2. By allowing the Variance the neighboring home values were significantly decreased;

3. The Board exceeded its authority;

4. Although the Arrigos requested them, neither of the following was included in the Zoning Board's special conditions for allowing the Variance:

 a. No trees be removed to preserve the existing eastern white pines, and

 b. The existing generator be moved to the front of the property and housed in a special building.

As relief the Arrigos sought for the Boards decision be "annulled" and that the court "grant such other and further relief as this court deems just and appropriate.

On February 21, 2006, Mr. Boch answered the Arrigos' complaint. Mr. Boch denied knowledge of the trees the Arrigos specifically referenced in their appeal and stated that the removal of the existing generator was not referenced in the special conditions to the variance. Further, Mr. Boch offered the following affirmative defenses: the Arrigos had no standing as they were not "aggrieved by the decision of the zoning Board;" the Arrigos failed to allege that the Zoning Board exceeded their authority; the Arrigos failed to state a claim on which relief could be granted. Also on February 21, 2006, Mr. Boch filed a Motion to Dismiss Plaintiffs' Complaint.

### Settlement Agreement

In August of 2006 the Arrigos and Mr. Boch signed an agreement to settle their disputes ("the Agreement"). (Exhibit A).The Arrigos did this in good faith and in an attempt to be good neighbors by not holding up the Bochs' improvements to their home. This agreement contained seven provisions including:

1. The existing fence abutting the Arrigos property would be replaced by a six foot fence and would be in the same place as the old fence.

2. The generator on the Bochs' property and abutting the Arrigos' backyard would be moved out of sight of the Arrigos' home within one year of the dismissal of the Arrigos' variance appeal.

4. No lights or cameras on the Bochs' property would be positioned so as to shine on the Arrigos' property.

5. The Bochs agreed not to move any "matured pines" from his property which abutted the Arrigos' property.

As per the above agreement, the Arrgios' variance appeal was dismissed on October 23, 2006.

### Post-Agreement Issues

Since the signing of the Agreement in August of 2006, the Arrigos have been plagued by the ongoing construction on the Bochs' home. The Arrigos are especially burdened by the constant noise, dust and general commotion because their property, through Bochs' expansion activities, is now surrounded by the Bochs' property, as Mr. Boch has purchased all of the other homes in the way of his extravagant home expansion and improvements. The Arrigos are now unable to enjoy their home in peace and quite and have lost most semblances of privacy because of the Bochs' actions.

**Tree Removal and Upkeep**

In September of 2008 the Bochs removed the tall, bushy privacy pine trees abutting the Arrigos' home alleging concerns that their root systems were compromised and that damage could occur to the Arrigos' property. The Arrigos, personally, had no notice of this removal, or even that the trees were in poor condition. These are the same trees that Mr. Arrigo inquired about during the November 2005 hearing of the Board of Appeal and the same trees he was told were going to remain where they were. The Board did state to Mr. Arrigo at that hearing that they would include a provision regarding the

preservation of those trees in their special conditions on granting the variance, which they did not do. Removal of these trees was also a breach of the 2006 Agreement between the Arrigos and the Bochs.

The Bochs contrived a claim that the root system of the existing trees was damaged by natural causes and secured an alleged expert to attest to that. The expert, however, stated that the entire root system damage was caused by the construction activities of the Bochs. According to the alleged expert the trees with root damage were in danger of falling thereby causing damage to the Arrigos' property and to the property of others and should be removed. Having now, by their own plotting, created irreparable harm to theprivacy trees necessitating their removal, the Bochs' had their attorney send a letter to the Arrigos' attorney stating that because of the root damage the trees had to be removed. In fact Bochs had already hired workers to remove the trees the very next day following the letter. By so plotting the Arrigos were caught totally unaware and could not go to court for a restraining order or even converse with Bochs over the removal of the trees. The new trees planted by the Bochs do not provide the privacy that the original trees did.

The Boch's continue to trim the new trees that are present in such a way as to further diminish the Arrigos prior privacy to the greatest possible extent. The purpose of the trees was to provide the Arrigos with privacy, and to plant smaller trees and trim the trees in this way completely negates this purpose. Further, the Bochs have currently covered these trees with burlap, which is extremely unsightly.

**Over-Sized Generator**

Contrary to the Agreement provision, the Bochs did not move their extremely loud and over-sized generator away from the Arrigos' property within the one year time-frame granted by the Agreement. When the Arrigos' attorney complained, the Bochs stated that the Arrigos would just have to "bear with them".

**Constant Noise, Dust and Commotion**

For the last seven years, including the years since the Agreement was signed, the Arrigos have had to deal with constant noise and dust in the air, resulting from the construction on the Bochs' property. The Arrigos were told numerous times that the pool house construction would last only six months to a year, first at the Board of Appeal hearing in November of 2005, and then again in the Special Conditions included in the Board of Appeal's grant of Boch's variance. Such construction, however, continues, to this day.

Large construction trucks are present lining the streets of the neighborhood most mornings, usually starting before seven in the morning. These trucks create a number of problems including holes in the streets and sidewalks. Frequently, these trucks line the street making it impossible for guests of the Arrigos, and others, to park.

These same large diesel trucks are frequently left running for hours at a time in front of the Arrigos' home for hours, with no driver in sight. The Arrigos have had to notify the police a number of times so that the trucks would be shut off.

**Tresspass**

There are constantly construction workers present in the neighborhood, seemingly unsupervised, trespassing through the Arrigos and neighboring property and littering. Not

only is the constant presence of these workers a nuisance, workers walk around the Arrigos' property to get to the pool house so there are strange people constantly traipsing around, creating issues of privacy and anxiety. Despite being told not to trespass, trespassing continued to occur.

**Spotlights, Cameras and Windows**

The Bochs have spotlights, cameras and windows which face the Arrigos' property day and night. None of these were to be installed according to the plans discussed at the Board of Appeal hearing in November 2005. These lights are also in breach of the Agreement which states that no lights or cameras on Bochs' property would be positioned so as to shine on the Arrigos' property. By not positioning these lights and cameras as promised the Bochs infringe on the Arrigos privacy and their enjoyment of their home as they have had to place window treatments on all their windows to block out the light emitted by these fixtures.

**Damage to Plaintiffs' Property**

The Arrigos' fence and property has been damaged by the construction on the Bochs' property because of the negligent manner in which the construction has been done. When the Bochs removed the trees they also replaced the original wooden fence with an iron fence. The new fence was installed in such a way that the fence was no longer *between the Bochs' property and the trees*, as stated in the Agreement. Instead the Bochs put the new fence, which he did not consult the Arrigos regarding, *between the trees and the Arrigos' property*, which is not only not aesthetically pleasing to the Arrigos, the construction of the fence damaged Arrigos' lawn in the process of its installation and is in total breech of the August 2006 agreement. In addition, to further

harass the Arrigos, the Bochs have replaced the original wooden fence with an iron fence facing Arrigos' property while the Bochs have little to no view of the fence due to new trees being placed in such a way as to block the view of the fence by the Bochs. The Bochs view is only of new trees.

**Negligence in Maintenance of Construction Site**

On any construction site, safety and dust fencing must be used to prevent the construction from being a nuisance and hazardous to those properties surrounding the construction. The Bochs have not adhered to such regulations and did not put up safety and dust fences facing the Arrigos' home and pool although fences were installed everywhere else. The town building inspector was notified but never responded. The Arrigos then notified the health inspector who contacted the Bochs and threatened to stop the project. It was only then that the Bochs put up the missing fences.

**Physical Repercussions Suffered by Arrigos**

Mr. Arrigo now takes asthma medication for breathing problems, which he did not do previous to the issues with Boch. His doctor has advised him that these breathing problems are, in all likelihood, the result of the dust created by the constant construction on the Bochs' property.

Mr. Arrigo has also been advised by his doctor that he should see a therapist to help deal with his issues with his neighbor because of the stress they cause him. Mr. Arrigo is currently taking anti-depressants and tranquilizers. He feels constant stress headaches, is unable to work, and is unable to sleep.

Mrs. Arrigo is currently taking anti-depressants and has serious trouble sleeping as she is plagued by nightmares.

## COUNT I

### Federal and State Civil Rights Violations

The Arrigos restate and incorporate herein by reference all above allegations as though specifically set forth herein. The Bochs have violated the civil rights of the Arrigos by violating the fourth (4th), fifth (5th) and fifteenth (15th) amendments to the Constitution of the United States of America which provides the Arrigos with the right to freedom from invasion of their privacy. Also, the Bochs have violated the Arrigos right not be subject to the deprivation of rights, privileges and or immunities under the Massachusetts Civil Rights Act of Massachusetts and the Massachusetts Constitution. The Bochs have interfered or attempted to interfere with these constitutional rights through threats, intimidation or coercion.

**Threats**

The Bochs have intentionally exerted pressure to make the Arrigos fearful or apprehensive of injury or harm to their home, land and person.

**Intimidation**

The Bochs have put Arrigos in fear for the express purpose of compelling the Arrigos to sell their property to the Bochs and or deterring the Arrigos from securing a fair and reasonable price for their home by the harassing expansion of Bochs' mansion, and general harassment aforesaid by the acts of the Bochs' agents or employees who have worked on Bochs' property and the Bochs' cutting of privacy trees and the acts herein alleged.

**Coercion**

The Bochs have applied force by their acts aforesaid to pressure the Arrigos to sell their property to the Bochs against their will and prevented the Arrigos from living a secure and private life in their home. The Bochs by engaging in alleged activities have also depreciated the value of the Arrigos property. The coercion has been physical in that the Arrigos have suffered serious harm to their physical and moral health and well being as well as economic harm in the depreciation in value of their property by the overreaching and gaudy expansion of Bochs' mansion and the behavior of the Bochs' including but not limited to their parties which are noisy, out of control and at times lewd and spill out onto the street.

## COUNT II

**Trespass**

The Arrigos restate and incorporate herein by reference all the aforementioned allegations as though specifically set forth herein.

The Bochs, by their agents and employees, have invaded the Arrigos' property affecting the Arrigos interest in and exclusive possession of their property.

The Bochs hired and continued to employ these same agents and employees knowing that trespass was occurring. Further, the Bochs continued the extravagant projects to their property knowing that trespass on the Arrigos property was an inevitable result of such extensive construction.

The action of trespass itself was therefore foreseeable as was the resulting damage done to the Arrigos property persons, including damage to the property itself, lessening

the value of the Arrigos' property and giving the Arrigos severe stress and anxiety, not to be tolerated in civil society.

## COUNT III

### Private Nuisance

The Arrigos restate and incorporate herein by reference all above allegations as though specifically set forth herein.

The nuisance consists inter alia of: constant noise and dust; trucks parking on the street preventing guests from parking; spotlights, cameras and windows facing the Arrigos' home; removal of an old wooden fence and putting up a new iron fence facing the Arrigos' property on the OTHER side of the trees; digging up the Arrigos' lawn and doing injury to the fence surrounding the Arrigos' pool in the process of installing said new fence; safety fences put up by the Bochs everywhere EXCEPT for the opening between Bochs and Arrigos' properties, adding to the dust created by construction.

These actions and occurrences resulting from the Bochs' actions have produced a special injury to the Arrigos private rights, as home owners, by interfering with the Arrigos' use and enjoyment of their property.

## COUNT IV

### Negligent Selection of an Independent Contractor

The Arrigos restate and incorporate herein by reference all above allegations as though specifically set forth herein.

The Bochs had a duty to exercise reasonable care in selecting an independent contractor.

The Bochs breached this duty by hiring and retaining an independent contractor where the contractor was incompetent by virtue of the contractor's inability to respect the property and rights to enjoyment of the neighbors and their properties. The independent contractor was responsible for the trespass of construction workers on the Arrigos' property, noise and dust in the neighborhood, as well as trucks in the street running at all hours of the day. Even if the Bochs were unaware of such incompetence when they hired the independent contractor, they certainly became aware of this incompetancy early in their dealings with this contractor.

The Bochs' negligent selection of an independent contractor has the caused the Arrigos personal injury and property damage.

## COUNT V

### Intentional Infliction of Emotional Distress

The Arrigos restate and incorporate herein by reference all above allegations as though specifically set forth herein.

The Bochs knew or should have known that emotional distress the Arrigos was the likely result of their actions conduct.

The conduct of the Bochs, through their agents and employees, was "extreme and outrageous", was beyond all bounds of decency" and was "utterly intolerable in a civilized community".

These actions of of the Bochs, through their agents and employees, have been the cause of the Arrigos' "severe" distress. This distress is of a nature that "that no reasonable man could be expected to endure," especially so constantly and in the privacy of their own home.

## COUNT VI

### Negligent Infliction of Emotional Distress

The Arrigos restate and incorporate herein by reference all above allegations as though specifically set forth herein.

The conduct of the Bochs, through their agents and employees, has been negligent and in complete disregard of the rights of their neighbors.

These actions of the Bochs, through their agents and employees, have been the cause of the Arrigos' "severe" distress. This distress is of a nature that "that no reasonable man could be expected to endure," especially so constantly and in the privacy of their own home. This distress is evident in Mr. Arrigo's current conditions of asthma and depression. Mrs. Arrigo also suffers great anxiety because of the goings on around her home. Any reasonable person would suffer such emotional distress under the circumstances of the case.

## COUNT VII

### Breach of Contract

The Arrigos restate and incorporate herein by reference all above allegations as though specifically set forth herein.

The parties entered into a contract (the Agreement) in August of 2006. The Bochs, by their actions aforesaid, breached that contract. The Arrigos complied with all terms and conditions of the contract and have suffered damages from the Bochs actions which breach this contract.

WHEREFORE, the Plaintiffs, Glenn and Elise Arrigo pray that:

1. Judgment in favor of Plaintiffs on all counts.

2. They be awarded compensatory damages.

3. They be awarded damages for infliction of emotional distress.

4. They be awarded punitive damages pursuant to 42 U.S.C. § 1983 for the violations of Plaintiffs' federally protected civil rights and for violations of the Massachusetts Civil Rights Act.

5. They be awarded interest, costs, expenses and attorney's fees pursuant to 42 U.S.C. § 1988.

6. They be awarded damages for violation of the Massachusetts Civil Rights Act (M.G.L.C.12 §§11 H and 111 and related sections.

7. They be awarded interest, costs, expenses and reasonable attorney's fees as well as punitive damages.

8. They be awarded such other and further relief as this Court deems meet and just.

Dated: January 14, 2010

        Respectfully Submitted:
        Plaintiff, Glenn A. Arrigo
        and Elise M. Arrigo
        By Their Attorney:

        Theodore H. Goguen, Jr., Esq.
        BBO# 196740
        46 Waltham Street, Suite 306
        Boston, MA 02118
        Phone: 617.338.4903
        Fax: 617.423.0515